# United States Court of Appeals
## For the First Circuit

No. 00-1598

UNITED STATES,

Appellee,

v.

ALBERT GONZALEZ-ARIMONT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Mauricio Hernandez-Arroyo for appellant.
Nelson Perez-Sosa, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Jorge E. Vega-Pacheco, Assistant United States Attorney, were on brief for appellee.

October 11, 2001

**STAHL, Senior Circuit Judge**.    Defendant-appellant Albert Gonzalez-Arimont appeals his conviction and sentencing for aiding and abetting in an armed carjacking resulting in death, 18 U.S.C. § 2119(3), and for use of a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c). Gonzalez-Arimont raises several issues.  First, he appeals a district court order denying a motion to dismiss his indictment for failure of the government to bring him to trial within seventy days of indictment as required by the Speedy Trial Act, 18 U.S.C. §§ 3161-3174.  Second, Gonzalez-Arimont argues that his indictment and conviction for two separate counts involving the same criminal conduct violate the Double Jeopardy Clause of the Fifth Amendment. Although represented by counsel, appellant has also filed a pro se brief, arguing that his attorney's failure to raise the Double Jeopardy issue constitutes ineffective assistance of counsel.  Finally, Gonzalez-Arimont appeals his sentence on the grounds that the district court erred in using his juvenile adjudications in determining his criminal history and in reducing his criminal history category to II rather than I.  We affirm.

## I. Background

On December 30, 1996, Gonzalez-Arimont and an unindicted (now deceased) coconspirator approached Santo Santos

Jordan and "carjacked" him at gunpoint. Gonzalez-Arimont and the coconspirator took Santos Jordan to an ATM machine where they forced him to withdraw cash from his bank account. Ten or fifteen minutes later they attempted to force Santos Jordan to withdraw additional cash from a second ATM but were unable to do so. Santos Jordan was shot and killed at some point that night. The next day, after a brief chase, police apprehended Gonzalez-Arimont and his coconspirator in Santos Jordan's car.

On June 11, 1997, Gonzalez-Arimont was arrested and charged as a juvenile. That case was assigned number 97-141 and a U.S. Magistrate ordered the appellant detained without bail. On October 16, 1998, almost a year and a half later, the district court issued an order transferring Gonzalez-Arimont's case to adult status under the same case number. Subsequently, on November 23, 1998, a grand jury issued a two count indictment charging him with aiding and abetting in an armed carjacking resulting in death, in violation of 18 U.S.C. § 2119(3) (Count I) and with use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count II). This case was assigned a new number of 98-249. Apparently due to the confusion about the correct case number (which led the district clerk's office to designate the already incarcerated defendant as a fugitive in the adult case), Gonzalez-Arimont was not

arraigned under the new indictment and hence did not enter a plea.

On February 1, 1999, the seventieth day after the return of the indictment, the United States filed a motion requesting a status conference on criminal case number 97-141, the juvenile case.  In turn, Gonzalez-Arimont filed a motion to dismiss the indictment in the adult case number 98-249 the next day, on grounds of the alleged Speedy Trial Act violation. The district court denied the motion to dismiss the indictment on two alternative grounds.  First, the court found that, because Gonzalez-Arimont had never entered a not-guilty plea with respect to the adult charges, the Speedy Trial Act clock had not begun to run.  Second, the court held that, even if the Speedy Trial Act clock began running on the day the grand jury returned the indictment on the adult charge, the government's request for a status conference, albeit mistakenly filed under the juvenile case number, was sufficient to stop the clock on the seventieth day after the indictment.  United States v. Gonzalez-Arimont, Crim. No. 98-249(SEC), R. Doc. 8 at 3-4 (D.P.R. March 8, 1999). Here, appellant requests review of the district court's determination that there was no Speedy Trial Act violation.

After the motion to dismiss was denied, Gonzalez-Arimont was arraigned and entered a plea of not guilty to the

-5-

charges.  Subsequently, on June 16, 1999, he pleaded guilty to both counts of the indictment.  At the change of plea hearing, Gonzalez-Arimont did not raise his Double Jeopardy objection (i.e., being indicted and convicted under two separate counts involving the same criminal conduct), but brings this issue before us on appeal. The record further indicates that Gonzalez-Arimont did not seek to preserve his right to appeal the Speedy Trial Act issue.

The presentence report recommended that Gonzalez-Arimont's sentence for Count I be based on a criminal history category of IV, yielding a sentencing range of 360 months to life imprisonment. In arriving at this determination, the probation department relied on information from the court for Minors Affairs in Caguas, Puerto Rico, showing three juvenile adjudications involving trespassing, a fight, and the possession of a single joint of marijuana.

At the sentencing hearing on March 23, 2000, the Court heard an objection by Gonzalez-Arimont that criminal history category IV over-represented his past history and that the designation should be adjusted downward to category I.  Although the court agreed that there should be an adjustment, it reduced the criminal history category to II rather than I and then determined that the appropriate imprisonment range for Count I

was 324 to 405 months. The court sentenced Gonzalez-Arimont to a term of 405 months on Count I, with an additional 60 months for count II, to be served consecutively. The inclusion of Gonzalez-Arimont's juvenile adjudications in his criminal history and the determination of the court that Gonzalez-Arimont's criminal history should be downgraded to category II rather than category I, are the final issues Gonzalez-Arimont raises on appeal.

## II. Speedy Trial Act

Gonzalez-Arimont first asserts that the district court erred in denying his motion to dismiss the indictment for failure of the government to bring him to trial within the 70 days from indictment required by the Speedy Trial Act.[1] We review the legal findings underlying a district court's Speedy Trial Act ruling de novo and review factual findings for clear error. See United States v. Rodriguez, 63 F.3d 1159, 1162 (1st Cir. 1995). As a preliminary matter, however, the government argues that by voluntarily pleading guilty and by not

---

[1]18 U.S.C. § 3161(c)(1) provides in pertinent part: "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date . . . of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."

simultaneously reserving the right to appeal any speedy trial issue, Gonzalez-Arimont waived his right to appeal the district court's determination. We agree.

This court has not previously ruled on the question of whether a guilty plea precludes a defendant from appealing the denial of his right to a speedy trial. See United States v. Garcia-Martinez, 254 F.3d 16, 19 (1st Cir. 2001) (finding it unnecessary to rule on the waiver question because the substantive Speedy Trial Act claim lacked merit); Acha v. United States, 910 F.2d 28, 30 (1st Cir. 1990) (same). But the prevailing position in other circuits has been that an unconditional guilty plea waives Speedy Trial Act claims on appeal. Taylor v. United States, 204 F.3d 828, 829 (8th Cir. 2000) (holding that appellant's Speedy Trial Act claim was waived by his plea of guilty); United States v. Bell, 966 F.2d 914, 915 (5th Cir. 1992) (holding that a defendant who knowingly and voluntarily enters a guilty plea waives all nonjurisdictional defects and that a Speedy Trial Act violation is such a nonjurisdictional defect); United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992) (same); United States v. Gines, 964 F.2d 972, 976 (10th cir. 1992) (same); United States v. Pickett, 941 F.2d 411, 416-17 (6th Cir. 1991) (same); Lebowitz v. United States, 877 F.2d 207, 209 (2d Cir. 1989) (same);

<u>United States</u> v. <u>Yunis</u>, 723 F.2d 795, 796 (11th Cir. 1984) (same).

The Federal Rules of Criminal Procedure specify "that if a plea of guilty . . . is accepted by the court there will not be a further trial of any kind, so that by pleading guilty . . . the defendant waives the right to a trial . . .." Fed. R. Crim. P. 11(c)(4). In the course of the change of plea hearing, the court asked Gonzalez-Arimont whether he understood that "by entering a plea of guilty . . . there will be no trial and [he] will have waived or given up [his] right to a trial as well as those other rights associated with the trial . . .. " (Tr. of Change of Plea, No. 98-249(SEC), R. Doc. 42 at 5 (D.P.R., June 16, 1999).) Gonzalez-Arimont answered in the affirmative. We have previously held that, by waiving the right to a trial through a guilty plea, the defendant waives all nonjurisdictional defenses. <u>See</u> <u>United States</u> v. <u>Cordero</u>, 42 F.3d 697, 699 (1st Cir. 1994); <u>Acevedo-Ramos</u> v. <u>United States</u>, 961 F.2d 305, 308 (1st Cir. 1992); <u>Valencia</u> v. <u>United States</u>, 923 F.2d 917, 920 (1st Cir. 1991). We now join with our sister circuits and hold that a claim under the Speedy Trial Act is a nonjurisdictional defense that is waived with an unconditional guilty plea.

A defendant may, "[w]ith the approval of the court and the consent of the government, . . . enter a conditional plea of guilty . . ., reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion."  Fed. R. Crim. P. 11(a)(2).  See United States v. Caraballo-Cruz, 52 F.3d 390, 392 (1st Cir. 1995) (holding that the waiver of all nonjurisdictional defects under a guilty plea is overcome when the parties enter a conditional plea agreement that expressly preserves the defendant's right to raise an issue on appeal).  But Gonzalez-Arimont made no attempt at the time of his guilty plea to reserve the Speedy Trial Act issue and we accordingly find that he has waived his right to raise it on appeal.[2]  See United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996) (finding that the defendant could not bring a Speedy Trial Act issue on appeal where he had not reserved the right to appeal at the time of the guilty plea).

---

[2]There may be cases in which denying the right to bring a Speedy Trial Act claim on appeal, even in the absence of an express reservation, will lead to a significant miscarriage of justice.  While we are concerned that Gonzalez-Arimont spent almost a year and a half in detention as a juvenile, without an arraignment, only then to be indicted as an adult, we see no real miscarriage of justice.  In any case, the year and a half that elapsed between Gonzalez-Arimont's arrest and indictment is not an issue on appeal before us and we accordingly do not address it.

Gonzalez-Arimont additionally contends that the district court's substantive holdings on the Speedy Trial Act question were erroneous. Because we find that Gonzalez-Arimont's guilty plea precluded him from raising the speedy trial issue on appeal, we need not address the substantive findings of the district court.

### III. Double Jeopardy

Gonzalez-Arimont's second argument is that his indictment and conviction for violations of both 18 U.S.C. §§ 2119(3) and 924(c) violate the Double Jeopardy Clause of the Fifth Amendment because the two counts concern the same criminal conduct. In making this argument, appellant relies primarily on a district court case which was reversed by this court, United States v. Centeno-Torres, 857 F. Supp. 168 (D.P.R. 1994), rev'd, 50 F.3d 84 (1st Cir. 1995). Centeno-Torres involved the same statutory provisions at issue in this case. We found on appeal that Congress intended § 924(c)'s firearm violation "to serve as a cumulative punishment in addition to that provided for the underlying violent crime" and that the Double Jeopardy Clause was therefore not offended. 50 F.3d at 85 (citing Missouri v. Hunter, 459 U.S. 359, 367 (1983)). In a multi-panel circuit, uniformity of decision is achieved only by strict adherence to previous holdings, with the function of overturning precedent

-11-

reserved for the court sitting en banc.  See Williams v. Ashland
Eng'q Co., Inc., 45 F.3d 588, 592 (1st Cir. 1995); Lacy v.
Gardino, 791 F.2d 980, 985 (1st Cir. 1986).  We accordingly are
bound by Centeno-Torres's holding that there is no Double
Jeopardy Clause violation in appellant's case; in any event, we
see nothing in appellant's argument to convince us that Centeno-
Torres was wrongly decided.[3]

In a separate but related claim set forth in his pro
se brief, appellant further argues that his counsel rendered
ineffective assistance by failing to raise the Double Jeopardy
question discussed above. Notwithstanding our usual practice of
requiring ineffective assistance issues to be reserved for a
collateral attack, United States v. Mala, 7 F.3d 1058, 1063 (1st
Cir. 1993) (citing cases), we can dispose of Gonzalez-Arimont's
ineffective assistance of counsel claim now.  The attorney's
failure to raise the Double Jeopardy question can hardly be
considered ineffective assistance in light of the fact that the
argument would have been contrary to clear precedent in this
Circuit.  We have recognized an exception to the preference for

_____

[3]Because appellant's Double Jeopardy claim is contradicted
by clear precedent in this Circuit, and thus easily dismissed,
we do not reach the government's alternative argument that
Gonzalez-Arimont forfeited his right to have the claim
considered on appeal by failing to first raise it in front of
the district court.

-12-

resolving ineffective assistance arguments via collateral attack where "the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim." <u>United States</u> v. <u>Natanel</u>, 938 F.2d 302, 309 (1st Cir. 1991). Gonzalez-Arimont's claim falls squarely within that exception and we find that it is meritless.

## IV. Criminal History

Gonzalez-Arimont has appealed his sentence on two grounds, both concerning the evaluation of his criminal history. First, he argues that the three misdemeanors on his juvenile record should not have been taken into consideration because they were "expunged convictions" within the meaning of U.S.S.G. § 4A1.2(j), and thus not to be counted in calculating his criminal history. Alternatively, the appellant contends that, even if the district court correctly included the misdemeanors in its criminal history determination, it should have reduced his criminal history category to I rather than II.

A. Expungement Question

In reviewing a sentence under the United States Sentencing Guidelines ("the Guidelines"), "[w]e first determine the applicability of [each guideline] to a particular case de novo. After determining the guideline's scope and meaning, we review the district court's factual determinations for clear error . . .." United States v. Cali, 87 F.3d 571, 575 (1st Cir. 1996) (citations and internal quotation marks omitted). At issue in Gonzalez-Arimont's appeal is the scope and meaning of U.S.S.G. § 4A1.2(j); we therefore review the district court's determination de novo.

The Guidelines specifically provide for certain juvenile adjudications to be considered in evaluating the defendant's criminal history. U.S.S.G. § 4A1.2(d).[4] But the

_____

[4]U.S.S.G. § 4A1.2(d) provides as follows:
**(d) Offenses Committed Prior to Age Eighteen**
    (1) If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under §§4A1.1(a) for each such sentence.
    (2) In any other case,
        (A) add **2** points under §4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;
        (B) add **1** point under §4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

-14-

guidelines also provide that "sentences for expunged convictions are not counted . . .." U.S.S.G. § 4A1.2(j). Gonzalez-Arimont contends that juvenile adjudications, under Puerto Rico law, are "expunged convictions" within the meaning of § 4A1.2(j). We find his argument unpersuasive.

The Commentary to § 4A1.2(j) provides as follows:

A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not counted. U.S.S.G. §4A1.2 cmt. n. 10.

The Puerto Rico Rules of Procedure for Minors' Matters (the "Rules") order juvenile records of minors to be sealed. 34 P.R. LAWS ANN. App. I-A R. 10.6 (1991). The law contemplates extensive confidentiality and severely restricts access to the records. Id., App. I-A R. 10.2; see also, id., § 2237(d). However, only "where no probable cause has been determined, where no offense has been perpetrated, or where complaints have been dismissed" are the court records actually destroyed. Id., App. I-A R. 10.6.

The Rules thus suggest that juvenile records under Puerto Rico law are sealed and kept confidential for reasons that are not related to "innocence or errors of law," as contemplated by the Commentary (since a concern with innocence

-15-

or error instead leads to destruction of the records). The Rules specify that they are to be interpreted in part according to the purpose of "provid[ing] for the care, protection, development, habilitation and rehabilitation of minors," Id., § 2202(a), App. I-A R. 1.2, suggesting that the confidentiality of records is designed to remove stigma and encourage rehabilitation. We held in United States v. Fosher, 124 F.3d 52, 57-58 (1st Cir. 1997), that a set-aside under the Federal Youth Corrections Act is "for reasons unrelated to innocence or errors of law" and therefore not expungement. We now similarly hold that Gonzalez-Arimont's juvenile adjudications, while sealed and kept confidential under Puerto Rico law, most likely for reasons of encouraging rehabilitation, were not "expunged" within the meaning of the Guidelines and were properly included in the calculation of his criminal history.[5] In taking this position, we are in agreement with the majority of the circuits that have considered the meaning of expungement under § 4A1.2(j). See, e.g., United States v. Hines, 133 F.3d 1360, 1362-67 (10th Cir. 1998) (holding that "Application Note 10

_____

[5]The confidentiality of juvenile records contemplated by Puerto Rico law is not threatened by our holding. The records were provided to the sentencing court only, strictly for the purpose of a determination concerning defendant's criminal history. We see no inconsistency between this process and the policy of confidentiality.

-16-

requires sentencing courts to analyze the true basis for expungement under state law rather than relying on the varied nomenclature among jurisdictions"); <u>United States</u> v. <u>Nicolace</u>, 90 F.3d 255, 258 (8th Cir. 1996) (finding that the set aside under the Federal Youth Corrections Act was enacted to "encourage a youth's evolution into productive citizenship" and is therefore properly included in calculating the criminal history score); <u>United States</u> v. <u>McDonald</u>, 991 F.2d 866, 871-72 (D.C. Cir. 1993) (holding that a set aside under the District of Columbia Youth Rehabilitation Act is for the social objective of rehabilitating juvenile offenders and therefore not expungement).

## B. Criminal History Category

In an alternative attack on the criminal history calculation, Gonzalez-Arimont contends that, even if the district court properly took account of his juvenile adjudications, it should have assigned him a criminal history category of I rather than II. He argues that, given the minor nature of the offenses and the young age at which they were committed, even a category of II over-represents his criminal history.

"[A] district court's discretionary refusal to depart downward is unreviewable unless the court believed it lacked the authority to do so."  United States v. Patrick, 248 F.3d 11, 28 (1st Cir. 2001), petition for cert. filed (U.S. Aug. 1, 2001) (No. 01-5868).  In this case, the district court undisputably recognized its authority to depart from a strict application of the Guidelines, since it did so in reducing Gonzalez-Arimont's criminal history category from IV to II.  We therefore decline to review the court's determination.

**Affirmed.**