**UNITED STATES of America,**

v.

**MORALES–RIVERA, et al. Defendant.**

**No. CR. 99–185(DBH).**

United States District Court, D. Puerto Rico.

April 3, 2002.

Ana Berta Vazquez–Martinez, San Juan, PR, John F. Cicilline, Providence, RI, for Norberto Morales–Rivera.

Maria T. Arsuaga, Federal Public Defender's Office, San Juan, PR, for Francisco Irizarry–Mendoza.

Frank D. Inserni–Milam, San Juan, PR, for Pedro L. Bonilla–Marengo.

Daniel J. Vaccaro, U.S. Attorney's Office, San Juan, PR, for U.S. Attorneys.

## DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS THE INDICTMENT FOR VIOLATIONS OF THE SPEEDY TRIAL ACT

D. BROCK HORNBY, Chief Judge, sitting by designation.

On June 25, 1999 the defendants[1] were indicted for conspiracy to distribute con-trolled substances and possession of firearms in furtherance of a drug trafficking crime.[2] On June 29, 1999, the defendants were arrested and made their initial appearance before the Magistrate Judge. On January 30, 2002, defendant Norberto Morales–Rivera filed a motion seeking dismissal of the Indictment for violations of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1994). Defendants Pedro Bonilla–Marengo and Francisco Irizarry–Mendoza have since joined this motion. Generally, the Speedy Trial Act provides that a criminal defendant must be tried within 70 days of either his initial appearance before a judicial officer or the indictment, whichever occurs later. The Act allows this 70–day clock to be tolled, however, for certain specified periods. After reviewing the record in this case, I conclude that although 945 days elapsed between the defendants' initial appearance before a judicial officer and the filing of the speedy trial motion, at least 933 of those days are excludable from the speedy trial calculation. Because no more than 12 countable days have accumulated, the Speedy Trial Act has not been violated and the motion is DENIED.

### DISCUSSION

 "The Speedy Trial Act . . . commands that a defendant be tried within 70 days of the latest of either the filing [and making public] of an indictment or information, or the first appearance before a judge or magistrate." *Henderson v. United States,* 476 U.S. 321, 322, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986); 18 U.S.C.

---

1. Seven of the eight defendants in this case were charged in the original Indictment. On April 3, 2001, the Grand Jury returned a Superseding Indictment, which added an eighth defendant, Javier Colon–Almestica. Defendant Colon–Almestica has not joined this motion.

2. The Indictment also charged defendant Bonilla–Marengo with assaulting an officer of the United States with a deadly weapon.

§ 3161(c)(1). However, the Speedy Trial Act specifically provides that this 70–day clock is tolled for certain designated "periods of delay." 18 U.S.C. § 3161(h). Determining whether a Speedy Trial Act violation has occurred is a two-step process. First I must "do the basic mathematics and determine the aggregate time elapsed awaiting trial." *United States v. Barnes*, 159 F.3d 4, 10 (1st Cir.1998). Then I must "ascertain how many days should be excluded from the total time." *Id.*

## A. Step One

 On June 25, 1999, the Grand Jury returned a sealed Indictment charging defendants Norberto Morales–Rivera, Jerry Martinez–Marti, Francisco Irizarry–Mendoza, Carlos Parrilla–Elicier, Victor Medero–Ruiz, Pedro Bonilla–Marengo and Alexis Maldonado–Marquez with conspiracy to distribute controlled substances and possession of firearms in furtherance of a drug trafficking crime. On June 29, 1999, all seven defendants were arrested and made their initial appearance before a Magistrate Judge. On June 29, 1999, the Court also ordered the Indictments unsealed. Because both triggering events (the initial appearances and the unsealing of the indictments) occurred on June 29, 1999, the Speedy Trial Act clock started to run the next day, June 30, 1999. *See, e.g., United States v. Barnes*, 159 F.3d 4, 10 (1st Cir.1998) ("time on [the defendant's] speedy trial clock began to accrue on ... the day after her first appearance before a magistrate judge"); *United States v. Rodriguez*, 63 F.3d 1159, 1162 (1st Cir.1995) ("[t]he metaphorical clock ... started running ... the day after the indictment"). The clock stopped running on January 30, 2002, the day defendant Morales–Rivera filed his Motion to Dismiss the Indictment for Violations of the Speedy Trial Act. *See United States v. Connor*, 926 F.2d 81, 84 (1st Cir.1991) ("[A] motion for dismissal

[under the Speedy Trial Act] is effective only for periods of time which antedate the filing of the motion. Subsequent periods of delay, whether includable or excludable, are inconsequential."). Because the day the speedy trial motion is filed is excludable, January 29, 2002 is actually the last countable day. *United States v. Staula*, 80 F.3d 596, 600 (1st Cir.1996) (holding that the day defendant filed speedy trial motion is excluded from 70–day clock). Therefore, the speedy trial clock ran for 945 days from (and including) June 30, 1999 to January 29, 2002.

## B. Step Two

In the second step of the analysis, I must determine how many of these 945 days are excludable under 18 U.S.C. § 3161(h). In order to make this determination, I have reviewed the entire docket and case file, including all of the motions, hearings, orders and other events that could potentially produce excludable time. However, I will only discuss a selection of those events that, by themselves, account for a sufficient amount of excludable time. Furthermore, I will discuss excludable time, generally, rather than with respect to individual defendants because "[i]t is well-settled that an exclusion of time attributable to one defendant is applicable for all codefendants." *United States v. Barnes*, 159 F.3d 4, 10 (1st Cir.1998) (citing *United States v. Santiago–Becerril*, 130 F.3d 11, 19 (1st Cir.1997)).

### (1) The 204 days from June 30, 1999 to January 19, 2000 are excludable.

 On June 29, 1999, the Government filed a motion seeking the detention without bail of all seven defendants named in the original indictment. On July 1, 1999, the Court held a hearing and ordered defendants Martinez–Marti, Irizarry–Mendoza, Parrilla–Elicier, Bonilla–Marengo, Me-

dero–Ruiz and Maldonado–Marquez held without bail. On July 2, 1999, the Court held a hearing and ordered defendant Morales–Rivera held without bail. Therefore, the time from June 30, 1999 to July 2, 1999 is excludable as "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F); *see also United States v. Barnes,* 159 F.3d 4, 11 (1st Cir.1998) ("we have read the term 'pretrial motion' broadly to encompass all manner of motions, ranging from informal requests for laboratory reports to 'implied' requests for a new trial date" (internal citations omitted)); *United States v. Santiago–Becerril,* 130 F.3d 11, 16 (1st Cir.1997) (excluding time for motion to detain defendant without bail).

■ The defendants were arraigned on the same day as their bail hearing. At the arraignments, the Court allowed the parties 15 days to file pre-trial motions. Thus, the time from July 3, 1999 to July 17, 1999 (15 days starting the day after defendant Morales–Rivera's arraignment) is excludable as "time set aside by the district court as motion preparation time." *Rodriguez,* 63 F.3d at 1165 (citing *United States v. Barnes,* 909 F.2d 1059, 1064–65 (7th Cir.1990) ("whether a defendant actually files a motion or not ... the initial time period the district court allowed for the preparation and filing of motions is excludable under the Speedy Trial Act")); *see also* Sarah Jane Cole, Thirtieth Annual Review of Criminal Procedure, Speedy Trial, 89 *Geo. L.J.* 1377, 1391 n. 1208 (2001) (collecting cases).

■ On July 13, 1999, the Government filed a motion asking for additional time to comply with the discovery requirements of Local Rule 409. On August 25, 1999, the Court ruled this motion moot. For a motion that does not require a hearing, the Speedy Trial Act "allow[s] for the exclusion of all of the time from the filing of the motion to the time that the court receives all reasonably expected papers, plus no more than an additional 30 days of advisement time." *Rodriguez,* 63 F.3d at 1163. Therefore, the time from July 13, 1999 to August 12, 1999 is excludable.

■ On July 27, 1999, defendant Bonilla–Marengo filed a motion asking the Court to stay the proceedings and order the Government to comply with the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5042 (1994). On August 5, 1999, the Court referred the motion to the Magistrate Judge. On August 12, 1999, the Government filed a response. On August 16, 1999, the Magistrate Judge held a hearing on the motion. On August 19, 1999, the Magistrate Judge denied the motion. The time from July 27, 1999 to August 19, 1999 is excludable as delay resulting from a pretrial motion.

■ On August 11, 1999, the defendants[3] filed an omnibus discovery motion. On August 24, 1999, the Government filed a response and requested additional time to comply with those portions of the defendants' request that it did not contest. On October 8, 1999, the Court referred both motions (the original discovery motion and the Government's request for more time) to the Magistrate Judge. On November 1, 1999, the Magistrate Judge granted the Government's request for additional time. At the same time the Magistrate Judge granted part of the defendant's motion and denied the remainder. Only a portion of this period is excludable however. Once the Government filed its response, the

---

**3.** The motion was filed by all of the defendants except defendant Morales–Rivera. Defendant Morales–Rivera later adopted the motion.

Speedy Trial Act allowed the Court 30 days to decide the motion. Therefore, the period from August 11, 1999 to September 23, 1999 is excludable. The clock stopped again when the Court referred the motions to the Magistrate Judge. Thus the time from October 8, 1999 to November 1, 1999 is also excludable.

■■■■ On August 31, 1999, defendant Bonilla–Marengo filed a motion asking the Court to reconsider its denial of his Federal Juvenile Delinquency Act motion. The Government's response was due September 13, 1999. However the Government did not file a response. On October 8, 1999, the Court referred the motion to the Magistrate Judge. On November 1, 1999, the Magistrate Judge granted the motion. The entire period from August 31, 1999 to November 1, 1999 is excludable. Although more than 30 days elapsed between the filing of the motion and the Court's decision to refer the matter to the Magistrate Judge, the allowable 30–day under advisement period did not begin when the motion was filed. The 30–day under advisement period does not begin until "the court receives all reasonably expected papers." *Rodriguez*, 63 F.3d at 1163. Although the Government did not, ultimately, file a response to the motion, there is no indication in the record that the Court could have known this until the response deadline passed. Consequently, the Court could not have taken the motion under advisement until September 14, 1999 (the day after the Government's response was due) and the decision to refer the motion to the Magistrate Judge occurred within the 30–day window.

■■■■ On July 22, 1999, the Court scheduled the trial for September 28, 1999. On September 27, 1999, the Government filed a motion seeking a continuance due to a conflict with the ongoing trial in another case. On September 27, 1999, the Court granted the motion. The conflicting trial ended on December 14, 1999. On January 24, 2000, the Court rescheduled the trial for February 11, 2000. "The [Speedy Trial Act] excludes any period of delay resulting from the court's granting of a continuance if the continuance was granted on the basis of findings that the ends of justice served outweigh the speedy trial interest." *Santiago–Becerril*, 130 F.3d at 16 (citing 18 U.S.C. § 3161(h)(8)(A)). "To ensure the appropriateness of this balance, the trial court ordinarily must elucidate its reasons for approving such a continuance, save for cases in which those reasons are readily apparent from the circumstances." *United States v. Barnes*, 251 F.3d 251, 256 (1st Cir.2001) (internal citations omitted); *see also United States v. Rush*, 738 F.2d 497, 507 (1st Cir.1984) ("[I]t is not necessary for the court to articulate the basic facts where they are obvious and set forth in a motion for a continuance."). Applying these standards. I find that the Court's decision to grant the Government's motion for a continuance complies with the requirements of 18 U.S.C. § 3161(h)(8)(A). *See, e.g., Santiago–Becerril*, 130 F.3d at 16–17 (approving exclusion of delay resulting from continuance granted because defense counsel was occupied with conflicting trial). Consequently, the time from September 27, 1999 to January 13, 2000[4] is

---

4. This calculation treats the end of the conflicting trial as an implicit motion requesting the setting of a new trial, and therefore allows the Court 30 days to reschedule. An argument could be made that the continuance did not end until a new trial was scheduled, and thus the whole period is excludable. *See, e.g.,*

*United States v. Santiago–Becerril,* 130 F.3d 11, 17 (1st Cir.1997) (approving exclusion of 27 day delay either as product of implicit motion for new trial date or as delay caused by continuance). Because the exclusion or inclusion of this time does not affect the outcome of this motion, I need not decide which

excludable as delay resulting from a continuance that serves the interests of justice.

◼ On January 5, 2000, defendant Maldonado–Marquez filed a motion to seal certain documents. On January 19, 2000, the Court granted this motion. Therefore, the time from January 5, 2000 to January 19, 2000 is excludable as delay resulting from a pretrial motion.

**(2) The 301 days from February 1, 2000 to November 27, 2000 are excludable.**

◼ On January 24, 2000, the Court set the trial for February 11, 2000. On February 1, 2000, defendant Bonilla–Marengo filed a motion asking the Court to vacate the trial date "in the interests of justice" citing ongoing discovery issues. On February 2, 2000, defendants Maldonado–Marquez and Irizarry–Mendoza filed motions asking to join defendant Bonilla–Marengo's motion. On February 8, 2000, the Court granted all three motions. In granting the motion to vacate the trial date, the Court specifically noted that it was considering the consolidation of this case with a companion case. (The trial in that companion case was scheduled for March 21, 2000.) On March 3, 2000, the Court rescheduled the trial for March 27, 2000. Therefore, the time from February 1, 2000 to March 3, 2000 is excludable as delay resulting from a continuance that serves the interests of justice. *See, e.g., Santiago–Becerril,* 130 F.3d at 17–18 (approving exclusion of delay resulting from continuance granted to allow the Government to obtain permission to try two juvenile defendants as adults, and thus to try them jointly with third defendant).

◼ On February 18, 2000, defendant Morales–Rivera filed a motion challenging the validity of the appointment of the In-terim United States Attorney and seeking dismissal of the Indictment. On February 22, 2000, defendant Martinez–Marti filed a motion seeking a stay of proceedings pending the resolution of the appeal of a case involving the same issue, *United States v. Peralta–Ramirez,* 83 F.Supp.2d 263 (D.P.R.2000). The remaining defendants later either adopted these motions or filed similar motions. On March 14, 2000, the Court issued an order holding the motions in abeyance pending the outcome of the appeal. The First Circuit decided the appeal on July 17, 2000. *United States v. Hilario,* 218 F.3d 19 (1st Cir.2000). On August 1, 2000, the Court took notice of this decision and ordered the defendants to tell the court whether they wished to hold their motions in abeyance until the appeal to the Supreme Court was resolved. On August 8, 2000, defendant Irizarry–Mendoza asked that his motion be kept in abeyance until the Supreme Court resolved the appeal. Later, defendants Parrilla–Elicier and Bonilla–Marengo also informed the Court that they wished to wait for the Supreme Court to resolve the appeal. The Supreme Court denied *certiorari* on November 27, 2000. *Hilario v. United States,* 531 U.S. 1014, 121 S.Ct. 572, 148 L.Ed.2d 490 (2000). On February 13, 2001, the Court denied all of the motions challenging the validity of the appointment of the Interim United States Attorney. Although it is not clear why the court waited until February 13, 2001 to dismiss the motions, there is no need to investigate this matter more fully. At the very least, the time from February 18, 2000 until November 27, 2000 is excludable as delay resulting from a pretrial motion.

**(3) The 428 days from November 28, 2000 to January 29, 2002 are excludable.**

One motion accounts for all of the remaining excludable time. On September

approach is best. For the sake of argument only, I take the more conservative approach.

5, 2000,[5] defendant Morales–Rivera filed a Motion to Suppress the Results of Aural and Video Interception.[6] On November 8, 2000, the Court referred the motion to the Magistrate Judge. On November 24, 2000, the Government filed a response. Between September 5, 2000 and March 4, 2002, several of the other defendants joined this motion. On March 4, 2002, I met with counsel for the defendants and the Government to address this motion and then denied it. Because the legal characterization of this meeting is essential to a determination of the amount of time that may be excluded as a result of this motion, it is necessary to describe the proceedings in more detail.

■ From March 4, 2002 until March 28, 2002, I sat as a visiting judge in the District of Puerto Rico. This case is one of those I was assigned to hear during my time in Puerto Rico. On March 4, 2002, I held a status conference where I addressed sixteen motions, including the September 5, 2000 Motion to Suppress. (*See* Docket Entry##101, 172–74, 177–78, 189–90, 192, 200, 206–07, 245, 249–50, 274.). I ruled on eight of these motions on the papers, without hearing any argument from counsel. For three other motions, I asked counsel whether an evidentiary hearing was necessary. After all of the parties agreed no hearing was necessary, I decided that I would rule on those motions solely on the papers as well. I ruled on the remaining five motions, including the September 5, 2000 Motion to Suppress, only after engaging in some measure of dialogue with counsel. Before ruling on

the September 5, 2000 Motion to Suppress, I invited counsel for both the defendants and the government to speak, asked several questions about the merits of the motion, and twice asked whether an evidentiary hearing was necessary. Both the defendants and the Government indicated that no evidentiary hearing was necessary. After this exchange and a further review of the filings, I denied the motion. The amount of time that is excludable because of this motion depends on whether the March 4, 2002 proceedings were a hearing within the meaning of the Speedy Trial Act.

■ As a general rule, when a motion requires a hearing, any time between the filing of the motion and the hearing is automatically excludable. *United States v. Salimonu,* 182 F.3d 63, 69 (1st Cir.1999) ("[A]s long as a hearing on the motion is to be conducted before trial, the delay until the hearing automatically should be considered delay 'resulting from' a pretrial motion."). Because of the wording of the Speedy Trial Act, this automatic exclusion applies even if the delay was "overlong, inexplicable, or unreasonable." *Staula,* 80 F.3d at 601 ("For motions that require a hearing, [subsection (F)] excludes the time between the filing of the motion and the hearing on that motion, even if the delay is overlong, inexplicable, or unreasonable." (footnote omitted)); *see also Henderson,* 476 U.S. at 326–27, 106 S.Ct. 1871 ("subsection (F) does not require that a period of delay [between the filing of a motion and the hearing on that motion] be 'rea-

---

**5.** Because the time from September 5, 2000 to November 27, 2000 has already been excluded from the calculation as a result of the February 18, 2000 motion challenging the validity of the appointment of the Interim United States Attorney, discussed above, the excludable time attributable to the September 5, 2000 Motion to Suppress is limited to the

428 days from November 28, 2000 to January 29, 2002.

**6.** Although the defendants filed several motions on September 5, 2000, I will only discuss this motion in detail. Therefore, I will refer to this motion as the September 5, 2000 Motion to Suppress.

sonable' to be excluded"). Therefore in order to decide whether the time associated with the September 5, 2000 Motion to Suppress is excludable, I must answer two questions. First, was a hearing held on the motion? Second, was that hearing necessary?

The Speedy Trial Act does not define the term "hearing." However, it is clear that certain types of interaction between a court and counsel meet the definition of a hearing. For example, in *United States v. Staula*, 80 F.3d 596 (1st Cir.1996), the First Circuit held that the trial court held a hearing on a motion when it "heard arguments put forward by the [defendant's] counsel in open court, on the record; questioned him; ... gave him the opportunity to highlight salient facts; [and] then gave the prosecutor a similar opportunity." *Staula*, 80 F.3d at 601. The court explained further:

> In our view, this give-and-take among counsel and the court, notwithstanding its relative brevity, is the essence of what a hearing entails. And, moreover, there was good reason for the exchange: the appellant had requested that the court take evidence, and the court was not in an optimal position to rule upon the appellant's suppression motion until it questioned counsel and determined the need for, and the potential efficacy of, an evidentiary hearing.

*Id.* at 601–02. The only other circuit that appears to have addressed this issue reached a similar conclusion. *See United States v. Grosz*, 76 F.3d 1318, 1323–25 (5th Cir.1996); *United States v. Tannehill*, 49 F.3d 1049, 1053–54 (5th Cir.1995); *see also* Cole, Thirtieth Annual Review of Criminal Procedure, 89 *Geo. L.J.* at 1390 n. 1206 (citing *Staula* and *Grosz*). Because the March 4, 2002 proceedings included just this sort of brief but substantive "give-and-take among counsel and the court," they

were a hearing for the purposes of the Speedy Trial Act.

The second part of the inquiry, whether the hearing was required, is somewhat more complicated. As the First Circuit has noted, "there is little authority on what constitutes a required hearing." *Salimonu*, 182 F.3d at 68. The *Salimonu* court concluded, however, that a hearing is presumptively required when the defendant requests it. *Id.* The court also indicated that it would generally defer to a trial court's determination that a hearing was necessary:

> [T]he district court in this case specifically found that this was the type of motion for which hearings are required: "[A] hearing on the motions filed on December 9, 1993 is required for their proper disposition. Both motions raise serious issues, particularly the motion for discovery from cooperating individuals. It is this court's regular practice to provide hearings on such motions and the court intends to do so here." This is a sufficient indication that a hearing was required: the district court is in a better position to determine the necessity of a hearing than we are, and although the delay was significant, we are loath to question the court's judgment in this area absent obvious subterfuge.

*Id.* The Fifth Circuit took an even more expansive view in *United States v. Grosz*, 76 F.3d 1318 (5th Cir.1996). In that case, neither party requested a hearing and the trial court never formally scheduled one. *Id.* at 1325. The court concluded, however, that a hearing is "required" as long as it is not held simply "to avoid the operation of the Speedy Trial Act." *See id.* at 1325 & n. 7. The analysis is the same even if the court waits until after the defendant files a Speedy Trial Act motion to decide that a previously filed motion requires a hearing.

*See Salimonu,* 182 F.3d at 67–68; *Staula,* 80 F.3d at 601.

 With these principles in mind, I turn to the September 5, 2000 Motion to Suppress. During the course of its investigation, the Government monitored the defendants' conduct inside the Galateo Housing Project. The Government videotaped the defendant's activities and intercepted and recorded various walkie-talkie radio communications made by the defendants. The Government did not seek a warrant before conducting this surveillance. The defendants argued that this evidence should be suppressed because the surveillance violated their statutory and constitutional privacy rights. However they provided little factual support for their arguments. For example, they argued that "[t]he areas at the Galateo Housing Project which were violated in this case are areas in which the defendant *can establish* a reasonable expectation of privacy and, therefore, are areas for which a warrant was required before there could be a seizure." (Docket Entry # 178, at 5–6 (emphasis added).) To support this position, they cite a list of factors (e.g., ownership, possession, control and historical use of the property, ability to regulate access) that a court should consider when determining whether a reasonable expectation of privacy exists. Yet, the motion did not outline the relevant facts that would have allowed me to apply those factors to this case. It was not clear from the defendants' motion whether they expected to present either evidence or further argumentation in support of the motion. In other words, borrowing from the First Circuit's language in *Staula,* I was not in "an optimal position to rule upon the [defendants'] suppression motion until [I] questioned counsel and determined the need for, and the potential efficacy of, an evidentiary hearing." Although the defendants, ultimately, offered nothing more at the hearing, I could not rule on this motion without offering them that opportunity. Consequently I determined then, and I reaffirm that determination now, that this motion required a hearing.

Therefore, all of the time from September 5, 2000 to January 29, 2002 is excludable as delay resulting from a pretrial motion "from the filing of the motion through the conclusion of the hearing." 18 U.S.C. § 3161(h)(1)(F).

### CONCLUSION

Together, these three periods of excludable time total 933 days. At the time the defendant filed his motion, although 945 total days had elapsed, that total included no more than 12 non-excludable days. Accordingly, the defendants' Motion to Dismiss the Indictment for Violations of the Speedy Trial Act is **DENIED.**

So **ORDERED.**